**CHEVREMONT vs. FULTON ET AL.**

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

Where a contract is made for the sale of a quantity of cotton in bales, for such price as two brokers chosen by the parties shall name, the moment the brokers agreed upon the price the sale was complete, and no new conditions could be imposed.

This is an action to compel a compliance on the part of the defendants, with the sale of 103 bales of cotton to the plaintiff for a certain price, which he alleges was agreed on. He prays that the cotton be sequestered and that he have judgment for its delivery to him, or in default, one thousand dollars damages.

The defendants pleaded the general issue; and averred the plaintiff did agree to buy the cotton, but neglected to comply or pay the price to their great disappointment.

On these pleadings and issues there was judgment for $100 and costs in favor of the plaintiff and the defendants appealed.

*Benjamin,* for the plaintiff.

*Peyton,* contra.

*Morphy, J.* delivered the opinion of the court.

Plaintiff sues for the delivery of 103 bales of cotton which he alleges were sold to him by defendants, and in default of such delivery, he prays for damages in the sum of $1000, for the inexecution of the contract. The defendants deny that they made any such sale to plaintiff, or that plaintiff has any cause of action whatever against them. By agreement on record, the sequestration sued out by plaintiff was dissolved; defendants' bond cancelled, the claim for the delivery of the cotton waived, but plaintiff's rights reserved as to damages for the alleged breach of contract. There was a judgment below of one hundred dollars in favor of the plaintiff, from which the defendants prosecute the present appeal.

The evidence shows that on the 23d of May, 1839, Robert Mitchell, of the firm of Fulton & Co., sold to plaintiff one hundred and three bales of Texas cotton, at 13¾ cents per pound. It appears that Mitchell, who had previously left orders with his clerk to sell this cotton, if fourteen cents were offered, found on his return to his counting house that the cotton had in the meantime been sold by his clerk at this price; unable to make delivery of this cotton, Mitchell told the plaintiff that he had a lot of 103 bales of Mississippi cotton, which he should let him have, in lieu of the Texas cotton, at such price as their brokers should set upon it. The brokers of the two parties accordingly met and, upon examination, valued the cotton at 13½ cents per pound. With this price, Mitchell was dissatisfied and tendered to plaintiff $100 to let him off; this not being accepted, Mitchell then told him that he must take away the cotton on that very day. The plaintiff answered that he could not possibly do it, whereupon Mitchell proposed that the cotton should be received the next day at twelve o'clock, P. M., to which the plaintiff assented. The next day at one o'clock, P. M., plaintiff called on Longer, his broker, and told him that he was unwell and wished him to go and receive the cotton. Longer, after sending for his clerk who was engaged elsewhere, went up to the Union Press, where the cotton was stored; Longer's young man having arrived some time after, remarked that their ink to mark the cotton was out, whereupon it being near three o'clock, Longer told the clerk of the yard that he would call the next day to receive the cotton. He accordingly did go early the following morning, but was told by the clerk of the yard that Mitchell had left orders not to deliver the cotton.

It is contended on the part of the defendants that the existence of the sale was made to depend on the receiving of the cotton at twelve o'clock the next day; that it was a condition of the contract and that plaintiff having failed to comply with it, there was no obligation on the part of defendants to deliver the cotton afterwards. Two witnesses testify that they dis-

EASTERN DIS.
July, 1841.

CHEVREMONT
vs.
FULTON ET AL.

tinctly heard Mitchell say that plaintiff should have the cotton only in case he received it at twelve o'clock the next day, but they cannot say whether plaintiff assented to this condition.

It is clear that the second contract was proposed by Mitchell as a substitute for the first, which had failed through his own fault in concluding with the plaintiff a bargain for the cotton, when there was a possibility of its having been already sold by his clerk, as it turned out to be the case. The moment the brokers of both parties agreed upon the price, the sale was complete, and the receipt and delivery of the cotton were to take place within a reasonable time and according to usage in sales of this kind. Mitchell had no right to complain of the price or to affix to his agreement with plaintiff any new or unusual condition; such a modification of the substituted contract would have concluded the plaintiff, had his assent to it been clearly shown; but in the absence of any such proof we agree with the judge below that Chevremont did not forfeit his contract by his omission to attend and receive the cotton at the hour named, and that he is entitled to damages for the breach of the same; having failed to execute the obligation they assumed, in lieu of their first contract, the defendants cannot complain when they are decreed to pay the sum which Mitchell, one of the partners, had himself proposed as a just indemnity.

The judgment of the Commercial Court is therefore affirmed with costs.

Where a contract is made for the sale of a quantity of cotton in bales, for such price as two brokers chosen by the parties shall name, the moment the brokers agreed upon the price the sale was complete, and no new conditions could be imposed.